State, Graham, pros., v. Mayor, &c., of Paterson.

THE STATE, GRAHAM, PROSECUTOR, v. THE MAYOR, &c., OF PATERSON.

1. The 72d section of the charter of 1861, of the city of Paterson, requires the commissioners to assess for grading, to be appointed and sworn for each particular case.
2. It is competent for the legislature to authorize the expenses of grading a street to be assessed upon the lands fronting upon it, in proportion to the benefits received.
3. This expression will be interpreted to mean that a sum, equal in amount to the peculiar benefit derived from the scheme, shall be assessed upon the frontage, in proportion to the advantage resulting to each land owner. So construed, it is a legitimate exercise of the law making power.
4. If the area, chosen by the legislature, is so small that the benefits, which flow from the authorized work, are not equal to its cost, the enactment will furnish no lawful authority for making an assessment in excess of the actual benefits.
5. An improper application of the law may be shown under the act of 1871, page 124.
6. The assessment being clearly defective and illegal in this case, it is set aside, although the prosecutors have been guilty of laches in sueing out their writ, a re-assessment being provided for.
7. Under the act of 1869, p. 1238, is a *certiorari* a writ of right?
8. The assessment in this case made upon an erroneous principle, and not graduated by the benefit imparted.

On *certiorari*. In matter of grading Graham avenue.

Argued at November Term, 1874, before Justices VAN SYCKEL and WOODHULL.

For the plaintiff, *Hilton* and *Horsey*.

For the defendants, *A. B. Woodruff*.

The opinion of the court was delivered by.

VAN SYCKEL, J.   The validity of the assessment for grading a section of Graham avenue, in the city of Paterson, is the subject of controversy in this case.   The counsel of both parties agree that these proceedings were instituted under the charter of 1861, and have argued the case upon that basis. Conceding this to be true, the legality of the proceedings in the case depends entirely upon their conformity to the provisions of this charter.   Section 177 of the charter of 1869, (*Laws*, 1869, *p.* 770,) provides that nothing therein contained shall destroy, impair or take away any right or remedy acquired or given by any act or part of act thereby repealed, and all proceedings of any kind whatever, commenced under any such former act, or parts of any such act, shall and may be carried on and completed, in all respects, in the same manner and with the same effect as though said act of 1869 had not been passed.

Influenced by the unreasonable delay of the prosecutor in sueing out his writ, this court limited the operation of the *certiorari* to the assessment, and we will not now consider any objection which affects the validity of the anterior proceedings, nor determine whether, by reason of their manifest irregularity, they can be regarded strictly as proceedings under the 72d section of the act of 1861.

By virtue of this section, (*Laws*, 1861, *p.* 354,) when a street is graded, the mayor and aldermen must appoint three impartial assessors to make the assessment for the expense of the work upon property fronting on the street, in proportion to the benefits received.

The minutes of the board show that, on the 27th of November, 1869, Dynan, Gerol, and Warren, who made this assessment, were elected street assessors.   This was a general appointment of these three persons to the position of street

assessors for the city. It does not appear when the memorandum, " York street," in pencil mark, on the margin of the minutes, was made, and that cannot materially change the character of the resolution.

The power and duty of the mayor and aldermen was to appoint for the specific purpose of making the assessment for Graham avenue, three impartial assessors, not to constitute a board of assessors generally, to act in all cases.

They should have been appointed for that particular case,. and sworn accordingly, under the 82d section.

This point has been adjudicated in the case of *The State* v.. *City of Hudson,* 5 *Dutcher* 109, under a similar provision in the charter of that city. But if these persons had been duly appointed and qualified to act in the premises, there is such infirmity in the assessment itself, that it cannot be sustained.. The assessors do not, in their report, certify that they imposed the burden in proportion to the benefits received, nor does it. in any wise appear that they were governed by a correct principle. On the contrary, their return shows that they arbitrarily assessed each lineal foot of frontage in an equal amount.

Reference to a few of the many adjudged cases in this state will show that this is a fatal infirmity. *Town of Bergen* v. *State,* 3 *Vroom* 490 ; *State, Evans, pros.,* v. *Jersey City,* 6 *Vroom* 381 ; *State, Bramhall, pros.,* v. *Bayonne,* 6 *Vroom* 476 ; *State, Hampson, pros.,* v. *Paterson,* 7 *Vroom* 159 ;: *State, Wilkinson, pros.,* v. *Trenton,* 7 *Vroom* 499.

It is insisted that, under the authority of the Agens case,. the mode prescribed for making this assessment is unconstitutional, and that no valid assessment can be made under the authority given. The argument is, that it is not competent for the legislature to authorize an assessment to be limited to the lands fronting upon the street to be improved, in proportion to the benefits conferred, but that it must in terms be made to embrace all lands beneficially affected by the work.. I do not understand any expression in the Agens case, or in. the Tidewater case, so to limit and circumscribe the legislative prerogative. The extent of the territory that may be

embraced by an assessment of this character, is within legislative discretion ; provided always, that the assessment is limited to the peculiar benefits received by those upon whom it is made to fall. Authority cannot be granted to lay the imposition arbitrarily, or in excess of the value specially imparted by any public undertaking. Such an interpretation must be given to this provision as will validate the action of a co-ordinate branch of our government, if it can be done without violating any settled rule of law.

This expression of the legislative will may be fairly understood to mean, that a sum equal in amount to the peculiar benefit derived from the scheme shall be assessed upon the frontage in proportion to the advantage resulting to each land owner. So construed, the mode prescribed for laying this burden, is a legitimate exercise of the law-making power. If, in putting the law into practical operation, it shall be ascertained that the legislature has selected a district so circumscribed, that the benefits which flow from the authorized improvement are not equal to its cost, the enactment would furnish no lawful authority to make an assessment in excess of actual benefits.

*The Drainage Case, in* 6 *Vroom* 503, is authority for holding that the words, " in proportion to the benefit received," in themselves limit the assessment to the extent of the benefit received, by implication. Otherwise a provision that the assessment shall be imposed on all lands benefited in proportion to the benefit received, cannot be upheld, for it is obvious that, in such case, there is no express limitation upon the right to assess the whole cost on the lands benefited, where the cost exceeds the benefits.

There will be no difficulty in ascertaining under the act of 1871, p. 124, when injustice has been done by the misapplication of the mode of assessment. These laws are unconstitutional only when they are so framed that they take private property for public use without just compensation. So long as the land owner receives a full equivalent for all he is required to disburse for a public improvement, no principle of

law is violated by the fact that another, who may be benefited by it, is not within the range of the assessment. There are many cases in which inequality may result from legislation, which is unquestionably valid. Absolute equality is unattainable in distributing the public burdens. Want of equality may be addressed as an argument to the legislature for a change of the law, but not to the courts as a ground upon which to declare the law unconstitutional.

In the exercise of its discretionary power, this court limited the effect of the writ in this case to the assessment, on the ground that property owners are estopped from calling in question the legality of proceedings under which, with notice to them, work has been done and expense incurred by the public authorities for their benefit, without any objection on their part, until the improvement is completed. If, in such case, the ordinance under which the work is directed to proceed is set aside, the entire expense must fall on the general tax levy. But the reason for this rule, which should be vigorously applied, does not extend to assessments where provision is made as in this case for a re-assessment. *State, Wilkinson, pros., v. Trenton,* 7 *Vroom* 506.

Defects in proceedings by municipal authority under which a sale and conveyance of real estate has been made, which were formerly available in an action of ejectment, since the passage of the act of 1869, p. 1238, can be taken advantage of only on *certiorari.* Under this act, it is questionable whether a writ of *certiorari,* if applied for after the sale and conveyance of the relator's property, is not a writ of right.

The language used by the framer of the act, that the proceedings may be reviewed by *certiorari* at any time, indicate an intention not to deprive the citizen in any case of a remedy of right to remove from his way a conveyance which obstructs him in the enjoyment of his property, and which has only the form and not the substance of law to sustain it.

In *The State, Baxter, pros.,* v. *Jersey City,* 7 *Vroom* 188, Justice Depue said that he thought the better construction was that with respect to objections available in ejectment, the owner

was entitled to the writ of *certiorari* at any time, and that lapse of time would not cure such defects.

This assessment being clearly defective, no useful end will be gained by dismissing the writ and subjecting the prosecutor's property to a sale to satisfy it, and thus compel him to resort to the expense and circuity of a new *certiorari*, in the consideration of which lapse of time cannot have the same healing influence.

Undoubtedly, where the writ is not prosecuted in aid of an action of ejectment, and the prosecutor has not acted with sufficient promptness, this court has power to dismiss it whenever the particular circumstances of any individual case render it just and equitable to do so. The fact that a re-assessment is provided for will be a persuasive reason for retaining the writ and passing upon the merits of the controversy.

My conclusion is that the entire assessment for grading Graham avenue should be set aside. Counsel may apply during the term for the appointment of commissioners to re-assess.

Justice WOODHULL concurred.